EMANUEL PAYNE v. THE STATE.

No. 1495. Decided March 27, 1912.

Rehearing denied June 19, 1912.

**1.—Burglary—Evidence—Judgment—Codefendant—Witness.**

Where, upon trial of burglary, a codefendant was introduced as one of defendant's witnesses who testified that he had been acquitted for a like offense, there was no error in not admitting in evidence the judgment of the court showing such acquittal; this motion being controverted and the testimony showing that he was the same person whom the chief State's witness had identified with the defendant on the night of the burglary.

**2.—Same—Evidence—Means Used—Collateral Fact.**

Where a State's witness denied that she had identified a certain monkey-wrench found in the house which was burglarized as her property, and the testimony showed that the wrench was the instrument that the burglar used in striking the chief State's witness on the night of the burglary, and that the defendant was in the room that night where the officers pretended to said witness that they found the wrench, the same was not a collateral fact, but such testimony as was admissible in the first instance, and the defendant's witness having denied the same there was no error in admitting testimony for her impeachment.

**3.—Same—Rule Stated—Impeachment—Cross-Examination.**

While a witness can not be cross-examined as to any fact which if admitted would be collateral and wholly irrelevant to the matters in issue, for the purpose of contradicting him by other evidence, yet, where it may be proved as a part of the case it is not collateral and subject to impeachment.

**4.—Same—Charge of Court—Actual Occupation of House.**

While it is true that under article 1314, Penal Code, the house must be actually used at the time of the burglary as a place of residence, yet it was not necessary in the court's charge to use the word "actual," as the evidence showed that the house was occupied and actually used by the inmates thereof, and therefore there was no reversible error under article 723, Code Criminal Procedure; the circumstance that the house was occupied as a residence at the time of the burglary having been also sufficiently submitted.

**5.—Same—Charge of Court—Control and Ownership—Husband and Wife.**

Where, upon trial of burglary, the ownership of the house was alleged in the husband, and the evidence showed that notwithstanding the husband did not sleep therein all the time (it being his wife's residence), but that he stayed at his daughter's house as a matter of convenience in the conduct of his busi-

ness, and that he stayed at his said wife's residence whenever it suited him, Held, that he was in control of said house and there was no variance and the ownership was properly alleged.  Article 457, Code Criminal Procedure.

**6.—Same—Charge of Court—Alibi.**

Where, upon trial of burglary, the court charged upon the issue of alibi, there was no error in refusing special charges which were upon the weight of the evidence ; the court also charging on the presumption of innocence and the reasonable doubt.  Following Jones v. State, 53 Texas Crim. Rep., 131.

Appeal from the Criminal District Court of Harris.  Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of burglary in the night-time; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*J. M. Gibson, J. M. Fenn* and *W. W. Wander,* for appellant.—On the question of impeaching witness as to the ownership of monkey wrench:  Rice v. State, 51 Texas Crim. Rep., 282; Watson v. State, 52 id., 88; Casey v. State, 49 id., 175; Cogdell v. State, 43 id., 178; Morton v. State, id., 533; Jones v. State, 38 id., 87; Harvey v. State, 37 Texas, 365; Woodward v. State, 42 Texas Crim. Rep., 188; Wells v. State, 43 id., 452.

On the question of control and ownership of house:  Jones v. State, 80 S. W. Rep., 530.

On the question of omitting the word "actually" in the court's charge:  Ware v. State, 2 Texas Crim. App., 547; Jones v. State, 80 S. W. Rep., 530; Mays v. State, 97 S. W. Rep., 703; Johnson v. State, 96 S. W. Rep., 45; Lewis v. State, 56 Texas Crim. Rep., 130, 114 S. W. Rep., 818; Jones v. State, 117 S. W. Rep., 127.

On the question of the court's charge on alibi:  State v. Stanley, 62 Texas Crim. Rep., 306, 137 S. W. Rep., 703.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On July 2, 1910, the appellant and A. Williams were jointly indicted in two counts for burglarizing in the night-time, on June 11, 1910, with intent to steal, the residence of J. T. Wells.  Appellant was tried on, and the charge confined to burglary, to that count of the indictment above stated.  There is no question raised about the sufficiency of the indictment.

Williams was tried first and acquitted.  He afterwards testified for appellant when appellant was tried.  The record and statement of facts all show this.  Appellant was convicted and his penalty fixed at ten years in the penitentiary.

The evidence shows that J. T. Wells and Maggie Wells were husband and wife; that J. T. Wells was the head of the family at the time of the burglary; that on the night of the burglary which occurred about one o'clock at night, he was not at home but was staying with

his and his wife's daughter in a different part and ward of the city of Houston, fiom where the burglary occurred; that he had a rooming house down in town which was a separate house from where his wife and son stayed at home where the burglary occurred, and he had to stay down in town to attend to his business; that it was not necessary for him to stay at home as he had business down town; that his wife managed the business at home and he on the outside; that the title to the home was in the name of his wife; that he gave her the money which paid for it and the title thereto was in her name; that whenever he wanted to have control over it he did so, but that she was boss of the house and run the residence; that he was off and on at home and had not deserted the place; that he and his wife had not separated and that he slept at home whenever he wanted to; that she had controlled the home and was boss of the house for some thirty odd years.

Mrs. Wells, among other things, testified that their home was her house and she and her husband controlled it; that she and her husband had not had a row and separated and that he had not left; that he would go first and stay awhile with their daughter and then at home awhile. She described her home fully, which is unnecessary to do here, other than the fact that it contained four rooms; that on the night of the burglary she slept in one room and her son in an adjoining room with the door between them open. The house, by all the witnesses, was shown to be the residence of Wells and his wife and occupied and used as such at and before the time of the burglary.

It was further shown that on the night of the burglary, before retiring, Mrs. Wells had closed up the house and windows; that about one o'clock on the night of June 10, 1910, some one removed a screen from over one of the windows, setting it down on the gallery and got into the residence; that some noise awakened her and she then screamed and the appellant hit her on the head. Upon her screaming it awoke her son and he immediately turned on the electric light, which was right over the head of his bed, and from this light she saw and recognized; fully identified and testified positively that it was the appellant; that the appellant then struck her two other licks on the head. One of these licks was above the right eye, one on top of the head and the other on the left side of the head. The licks cut her head and blood flowed therefrom and from them she was in bed eight or nine days. As soon as her son turned on the light, he got his gun and fired it but missed the appellant, while he was in his mother's room; that the appellant then ran, her son running after him and following after him some blocks. The appellant escaped. After the unsuccessful chase by her son, in returning, at the house adjoining his mother's, he phoned for the officers and they came out in about ten minutes after he phoned them. Shortly before the officers arrived he saw what he claimed to be appellant going up the stairways which were outside of the room where it was shown, without question, the appellant stayed, and shot at him with a pistol two or three times but did not hit him.

When the appellant ran out of the house and her son followed him, she went to the window, and she and her son both, in effect, testified that just outside of the window they saw another negro whom she testified she identified as Williams, the other indicted negro, but her son did not recognize and he could not identify him. Mrs. Wells also testified that she had repeatedly seen the appellant going back and forth in the yard of the house next to her residence. She did not know whether he roomed upstairs in that next yard or not. She knew he was there and had seen him going back and forth; that she had seen him doing this just the day before the burglary.

It was shown by appellant and others as well that he roomed in the second story of this house to which Mrs. Wells testified she had seen him going back and forth. He and several of his witnesses testified that he was in his room that night when all this shooting occurred, in bed asleep with a woman to whom he was not married. He and several of his witnesses so testified and if their testimony had been believed he would have established an alibi, which was his defense. It was shown and not disputed that Mrs. Wells had several hundred dollars in money, some jewelry, clothing and household goods and things of that kind in the house that night. The money and jewelry were in one of the dressers, and was not disturbed.

When the officers arrived they went to the room occupied by Mrs. Wells and found therein a monkey-wrench. Mrs. Wells testified that this wrench did not belong to her, nor on her place. It was identified by her and the officers before the jury on the trial.

Cloma Stokes and her husband Peter, also negroes, among other things, testified that she and Peter, with their child, slept in one of the rooms of the upstairs in the house where Mrs. Wells testified she had seen the appellant going back and forth to, and that the appellant and his (woman) girl slept in the adjoining room; that the appellant, in going in and out of his room had to pass through their room to get out and in, and that that night when this burglary occurred and all this shooting occurred, they were all, including appellant and his woman, in their respective rooms and that the shooting awakened them; that after the officers came they came up into her room and arrested them all. On direct examination appellant showed her the monkey-wrench identified by Mrs. Wells and the officers. She denied that that was her wrench, or that she knew anything about it, but she stated that on the night of the burglary the officers went into the kitchen and brought out a little bicycle wrench which she had identified and claimed that night. The State on cross-examination, asked her if on that night the officers did not produce the wrench identified by Mrs. Wells and the officers as having been found in her room that night and shown to her, the witness, and if she did not identify it on account of a piece broken off the handle and if she did not claim to the officers there that night that that wrench was her wrench. She denied this.

In rebuttal the State placed a policeman on the stand who testified about finding said monkey-wrench at the house of Mrs. Wells that night after he was called thereto and that there was blood on the wrench; that when he went over to the room where the appellant was found and where said appellant's witness, Cloma Stokes and others stayed, he went back into one of the rooms and pretended to find a monkey-wrench; that he then went back into where Cloma Stokes was, with the wrench that he had found in Mrs. Wells room, and asked her if it was hers; that she took it, examined it and stated that it was hers and that she knew it by the broken piece out of the handle.

One of appellant's bills of exceptions shows that on the trial of appellant he introduced, as·one of his witnesses, the said Williams who had been jointly indicted with appellant for this burglary and that he offered in evidence the judgment of the court showing the trial of said Williams for this burglary and the verdict and judgment of the jury acquitting him, and wanted him to testify among other things, the facts of an indictment, trial, and acquittal for the purpose of relieving him from any interference touching his credibility by reason of said indictment, and as affecting the accuracy of the identification of appellant by the State's witness Mrs. Wells. The State's attorney objected to this because it was irrelevant and inadmissible for any purpose. The court sustained the State's objection.

As stated above, the appellant had proved by Mrs. Wells on cross-examination that said witness Williams, was the person whom she saw on the outside at her window that night after appellant had struck her and run out of the house; that he had been tried and she had testified on the trial of said Williams, identifying him, not as the man who was in her house, but as the man she saw outside of her house that night and that he had been tried on this indictment and had been acquitted by the jury. The court held correctly, that the verdict of acquittal and judgment therein, of said Williams was inadmissible for the purpose offered and as it was clearly shown on the trial that he had been tried under this indictment and that Mrs. Wells had testified identifying him and that he had been acquitted on that trial, no possible injury could have occurred to appellant by not permitting this witness Williams to so testify again.

Another bill shows that when the State put on the police officer and had him to identify the monkey-wrench found at Mrs. Wells' that night, he was permitted to testify that he had shown that wrench to the appellant's witness Cloma Stokes and that she identified and claimed that wrench that night as shown in the statement above. The appellant objected to this because it was hearsay, having occurred in the absence of appellant; that it was immaterial and was undertaking to introduce irrelevant and hurtful collateral matter. The court overruled these objections and in allowing the bill stated that he admitted it as a predicate had been laid by the State on questions to Cloma Stokes, and she denied making said statements and that said testi-

mony was admitted by way of impeachment and the court admitted it for that purpose.

The court in charging the jury on this subject in a separate paragraph, charged as follows: "I instruct you that the statement of Cloma Stokes made to the officer (if any) can only be considered by you as it may or may not effect her testimony as a witness." The appellant also objected to this particular charge of the court as being highly prejudicial to appellant since it ruled out from the consideration of the jury her denial of her admissions to the officer that night and that it gave undue prominence to the officer's testimony and that it was upon the weight of the testimony.

Appellant contends, in support of his bill, that this was of a collateral matter and as the appellant was not present, it was hearsay and could not be introduced for the impeachment of the appellant's witness or for any purpose, and cites us to several cases for authority.

The unquestioned rule established and adhered to by text-book writers and many decisions of this court, is, as expressed by this court in Johnson v. State, 22 Texas Crim. App., 223: "It is a general rule that a witness can not be cross-examined as to any fact which, if admitted, would be collateral and wholly irrelevant to the matters in issue, for the purpose of contradicting him by other evidence, and in this manner discredit his testimony. . . . His answer can not be contradicted as to the collateral or irrelevant matter by the party who asked the question, but it is conclusive against him. (1 Greenl. Evid., 13 ed., 449, and notes; Brite v. The State, 10 Texas Crim. App., 368; Stevens v. The State, 7 Texas Crim. App., 39.) The test as to whether a fact inquired of on cross-examination is collateral, is this: Would the cross-examining party be entitled to prove it as part of his own case, tending to establish his plea. (Hart v. The State, 15 Texas Crim. App., 202, citing Whart. Crim. Evid., 8 ed., sec. 484.)" A long line of decisions of this State might be cited but it is unnecessary. There is no question about the correctness of the rule. The same thing is clearly established by all the cases cited by appellant on this point. Then the question is whether or not the State in this case would have been permitted on cross-examination of appellant's witness, Cloma Stokes, to prove as a part of its case that the wrench that was found that night at the house of Mrs. Wells did belong to her, was the property of the witness Stokes and kept in her house before that time. The testimony, without doubt, by circumstantial, if not direct testimony, shows that this wrench was the instrument that the burglar struck Mrs. Wells on the head with that night. It was further established, without controversy, that appellant was that night in the room where the officers pretended to the witness Cloma Stokes that he had found that wrench. Unquestionably, under the circumstances, the State could have proved by this witness as a part of its case that this wrench was her wrench and kept in her house prior to the time of this burglary and that appellant had easy access thereto. This being

the case, when the witness denied her statement to the officer that she had not identified it that night and claimed that wrench as the one that she had kept at her house, it was not an immaterial collateral matter and she could be disputed on that point, going to the credibility of her testimony in the attempt to establish an alibi for appellant. The court in his charge expressly limited this impeaching testimony of the officer so that it could be used only for that purpose and the criticisms of the charge of the court on that subject are not well founded.

In his motion for new trial the appellant attacks practically every paragraph and every sentence of the charge of the court for numerous reasons. We deem it proper, therefore, to copy the whole of the charge which is attacked. It is as follows:

"If you believe from the evidence, beyond a reasonable doubt, that the house mentioned in the indictment was occupied and controlled by J. T. Wells and was occupied and used by him as his place of residence, and that about the time and at the place stated in the indictment, the defendant, Emanuel Payne, did, between the hours of thirty minutes after sunset and thirty minutes before sunrise, by force and breaking, enter said house, without the consent of the said J. T. Wells, and with the intent to fraudulently take corporal personal property in said house, of value, belonging to said J. T. Wells from said house and from the possession of said J. T. Wells without his consent and with the intent to deprive him of such property and its value, and to appropriate the same to the defendant's use and benefits, then find said defendant guilty as charged in the second count of the indictment and assess his punishment by confinement in the State penitentiary any time not less than five years.

"If you do not so believe you will acquit the defendant.

"If J. T. Wells and his wife were not divorced, he had a right to go to the house when he saw fit to do so, and he was in contemplation of law, in control of the house, though he may not have lived there at the time of the occurrence charged in the indictment, and although he did not live there at all times or may not have been living there as an inmate of the house for one or more months preceding the occurrence. And in law the occupancy of the wife (if any) by the wife would be the occupancy of the husband, and you are further instructed that property owned and in possession of the wife is in law (for the purposes of this case) owned by and in possession of the husband.

"Among other defenses set up by the defendant is an alibi; that is, that if the offense was committed, as alleged, then the defendant was, at the time of the commission thereof, at another and different place from that which such offense was committed, and therefore, was not and could not have been the person who committed the same.

"Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the offense was com-

mitted at the time of the commission thereof, you will find the defendant 'not guilty.'

"I instruct you that the statement of Cloma Stokes made to the officer (if any) can only be considered by you as it may or may not effect her testimony as a witness.

"In all the criminal cases the burden of proof is on the State."

The remainder of the whole charge of the court is in two paragraphs. The first of these, which is omitted in copying the above, is the presumption of innocence and reasonable doubt. The next paragraph tells the jury that they are the exclusive judges of the facts proved, the credibility of the witnesses, etc., but they are bound to receive the law from the court, which is given in the charge, and they must be governed thereby. The gist of appellant's attack on the charge of the court is in substance that in the first paragraph, the court does not use the word "actually" where he tells them that they must believe, beyond a reasonable doubt, that the house burglarized was occupied and controlled by J. T. Wells "and was occupied and used by him as his place of residence." No special charge was requested on this subject. It is true that article 1314 of the Penal Code in describing the residence under the burglary statute, says that "it shall be construed to mean any building or room  .  .  .  occupied and actually used at the time of the offense by any person or persons as a place of residence." This is a separate article entirely from article 1305, defining the offense of burglary of a private residence. While it is always better for the court in the charge to use the language of the statute in describing the offense, yet, even in indictments, our statute, Code Criminal Procedure, article 474, says: "Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words." Again, in article 460, it is prescribed that an indictment shall be sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant and with that degree of certainty that would give the defendant notice of the particular offense with which he is charged and enable the court on conviction to pronounce the proper judgment. Again, in article 743 (old 723) this court is prohibited from reversing a judgment, because of a defective or improper charge, "unless the error appearing from the record was calculated to injure the rights of the defendant." In our opinion the omission by the court of the word "actually" in the charge could not and did not injure the appellant. There is not only no question but that the house was the permanent residence of Mr. and Mrs. Wells and was occupied and actually used by them as such, but it was then so actually used and occupied. If it was then so occupied and used, the omission of the word "actually" from the charge, would not be so material as to require a reversal. The idea intended to be conveyed by the Legislature in this article of

the Code was that the "building or room" need not be the permanent residence, but just so that the "building or room" was for the time being—when the burglary was committed, so occupied and used "as a place of residence." Holland v. State, 45 Texas Crim. Rep., 172; Johnson v. State, 52 Texas Crim. Rep., 201. The charge also sufficiently submitted the question to the jury under the circumstances that it was occupied and used as a residence "at the time of the burglary."

As to the question of the control and ownership of the house burglarized, appellant contending that the facts shown above, and the law is in effect, that the wife, Mrs. Wells, and not the husband J. T. Wells, was the owner and in such control, etc.

Our statute, article 457, Code Criminal Procedure, provides: "Where one person owns the property, and another person has the possession, charge, or control of the same, the ownership thereof may be alleged to be in either. . . . Where it is the separate property of a married woman, the ownership may be alleged to be in her, or in her husband. . . ." Section 4 of the Act of 1905, of our election law, says: "The residence of a single man is where he usually sleeps at night; *that of a married man is where his wife resides,* or if he be permanently separated from his wife, his residence is where he sleeps at night." Our Revised Civil Statutes, article 2967, declares what shall be the separate property of the wife, but as to such it prescribes, "But during the marriage the husband shall have the sole management of all such property." It is well established, under the decisions of the Supreme Court that the homestead of the husband and wife may be on his separate property, or her separate property, or their community property, but that in any and all events the husband shall have the management and control of the wife's separate property. Unless there is a permanent separation and abandonment by the wife of the husband the wife alone can not sell or dispose of her separate real property without the joinder of her husband and more particularly if it is the homestead. The evidence recited above, we think, without controversy, shows that notwithstanding the husband did not sleep at his and his wife's residence all the time, but that he possibly most of the time for sometime prior to this burglary stayed at his daughter's, apparently as a matter of convenience to him in the conduct of his business, yet, at any and all times he went to his residence whenever he pleased and stayed there at any and all times that suited him. So that, in our opinion, the court did not commit any reversible error in charging on this subject as contended for by appellant, when the whole charge on the subject is taken together, which is always necessary to be done.

Among the many complaints by appellant of the charge of the court, is to the charge on the subject of alibi. The charge above copied shows what the court charged on this subject. It is the settled doctrine of this court that a charge on alibi is unnecessary. Jones v. State, 53 Texas

Crim. Rep., 131. This decision has been followed uniformly by this court since it was rendered. The appellant on this subject requested these two special charges which were refused by the court. The first: "The defense of an alibi is a perfectly legitimate and legal defense and the jury will not consider the ——————— of district attorney upon such defense and they should acquit the defendant if they have a reasonable doubt as to whether defendant was in the house at the time alleged in the indictment." The other is this: "If the jury have a reasonable doubt as to whether the defendant was the actual person that was in the house alleged to have been entered, then they will find him not guilty." The first of these special charges was clearly improper because it was upon the weight of the testimony and was an improper comment upon appellant's defense of alibi, but whatever was proper in it or, in the other, was substantially covered by the charge of the court on the subject of alibi, as given, and especially as the jury were expressly charged by the court that the burden of proof was upon the State and that "the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt; and in case you have a reasonable doubt as to defendant's guilt, you will acquit him and say by your verdict not guilty." And in a separate paragraph, as shown by the charge of the court above quoted, which follows the submission of the case to the jury, they are told: "If you do not so believe, you will acquit the defendant."

It is unnecessary to further take up and discuss seriatim the various paragraphs and sentences in the charge of the court and the many and various objections thereto by appellant in his motion for new trial. We have carefully considered all these matters and are of the opinion that none of them show reversible error. The judgment will, therefore, be affirmed.

*Affirmed.*

[Rehearing denied June 19, 1912.—Reporter.]